The opinion of the Court was drawn up by
Shaw, C. J.
The only question presented to the Court in th>s case is, whether the trustees, or any of them, are chargeable on their answers. As respects the liability of Bishop, the assignee of Clisby, under a trust assignment disclosed in his answer, the question was decided, in the case of Gore v. Clisby Tr. 8 Pick. 555, which was a decision upon the liability of the same trustee, upon the same facts.
*25 In that case it was decided, that, where goods, lands and choses in action are assigned to creditors, or to "trustees for their use, and the assignees are summoned by another creditor, the court will not require the assignees first to apply the choses in action and the land, being funds not affected by the trustee attachment, in the assignees’ hands, in order to charge the goods, which may be so attached and held if not required to be held and applied to the purposes of the assignment. The case of Cutter v. Lupton & Trs. 8 Pick. 298, is an express decision to the same effect, where the funds in the hands of the assignee consist in part of choses in action, and in part of goods. In Gore v. Clisby, it was stated, that in regard to real estate conveyed in trust for the like purpose, while it remains undisposed of, the question whether the assignee could be compelled first to resort to the land, in relief of the goods, and in favor of the attaching creditor, was a question which had never been directly adjudicated. But it was in effect adjudicated in that case, and well distinguished from the case of Webb v. Peele, 7 Pick. 247, in which the lands were conveyed in actual discharge of the debts of the creditors, to the extent of their value, and therefore die goods in the hands of the assignee, were chargeable only for the balance of the debts of those creditors. It has since been directly decided, upon full consideration, that lands in the hands of the trustee undisposed of, do not constitute a fund which can be reached by a creditor of the grantor, by force of the trustee process. Bissell v. Strong Tr. 9 Pick. 562. The same considerations, therefore, which in Lupton v. Cutter applied to exempt a trustee from being obliged to charge the choses in action, in relief of the goods, for the benefit of the attaching creditor, apply with equal force in regard to real estate. It appearing in this case, as in the case cited, that the goods in the hands of the assignee, Bishop, were insufficient to discharge his own debts and those of the creditors of the assignor, who had become parties to the assignment previously to the attachment, the trustee must be discharged.[1]
*26 By the answers of Crockett, Seaver, Cutler and Hammond, constituting" one firm, it appears that previously to the service of the trustee process on them, they had received a quantity of rum from Clisby, the principal defendant, to sell on commission, that they had sold a part of the rum, on a credit which had not then expired, and that the sales were guarantied by them, for which they charged the usual guarantee commission. It also appears that they had on hand, unsold, a quantity of the rum so received, amounting to 4 hogsheads and 23 barrels. It also appears from their answers, that they had received notice of the assignment of Clisby to Bishop, a copy of which is annexed and made part of their answer.
In regard to the merchandise, which was sold previously to the service of the trustee process, the Court are clearly of opinion, that they cannot be charged. Had there been no assignment, there seems no ground upon which they could be charged. The rum was sold and the property changed, and it was no longer in their possession or under their control. They were not the debtors of the principal. It is true they, guarantied the solvency of the purchasers, and agreed to pay in case they did not. This undertaking, however, was collateral and contingent ; the purchasers were the debtors of the principal, till -the expiration of the credit, and the obligation of the trustees depended upon the contingency of their failure.[1] But it is not necessary to decide this point, because it is very clear, tnat if it were a debt due by the supposed trustees to Clisby, it was transferred by the assignment to Bishop, under the clause by which he assigned all his accounts and book debts.
In regard to the merchandise remaining unsold in the hands of the supposed trustees, this was, no doubt, goods deposited with them within the meaning of the statute, and liable to be reached by the trustee process, if it was not included in the assignment to Bishop. Whether that property was so included, is one of the principal questions, which has been *27 argued, and depends upon the construction to be put upon the instrument. After reciting his inability to pay all his debts, and his desire of making.a distribution of his property among his creditors, in manner thereinafter mentioned, Clisby assigns to Bishop a distil-house, with the land, wharf and buildings, and apparatus, (enumerating the articles,) and all the rum, molasses, whisky or gin and other liquors in the distil-house, on the wharf, or elsewhere on the premises, “ and all the casks, shooks, wood, stock and other personal property whatsoever, being on the premises of, or belonging to said Clisby, and a certain lighter and boat, with the apparel and appurtenances thereto appertaining, of or belonging to the said Clisby, lying or being near the premises. Also a dwelling-house,” &c. It is contended that this clause is broad enough to extend to all his personal property, and so to convey the rum in question, in the hands of the trustees. The clause standing alone is not entirely free from ambiguity ; but taking it in connexion with the context and with the other parts of the instrument, we are satisfied, that the construction contended for, is not the true one, and that the merchandise in question was not included in this description. He does not profess to convey all his property, unless the clause in question will bear that construction, which we think it will not. The preamble recites his intention to convey his property, as after mentioned The rum, molasses, whisky or gin and other liquors, are conveyed by the prior clause, and are expressly confined to those in the viistil-house, on the wharf, or elsewhere on the premises. The words “ personal property ” follow the words, “ casks, shooks, wood and stock,” and the rule of ejusdem generis, in construing general words, applies. When other personal property, specifically described, is added, after these general words, it seems to us quite clear that these words were not intended to apply to all his personal property, of whatever kind and wherever situated. There being no words in the assignment, sufficient to convey the property in question, we think it did not pass by the assignment to John Bishop, and of course remained in the hands of the trustees, as the property of Clisby, at the time of the service of the trustee process upon them, and to that extent that they must stand charged.

 See Sanford v. Bliss, post, 116; Guild v. Holbrook, 11 Pick. 161.

 See Guild v. Holbrook, 11 Pick. 101; Hopkins v. Ray, 1 MetC. 79; Meacham v. Me Corbitt, 2 Metc. 352; Wheeler v. Bowen, 20 Pick. 563; Holbrook v Waters, 19 Pick. 355; Stone v. Hodges, 14 Pick. 81; Taber v. Nje, post, 105 Faulkner v. Waters, 11 Pick. 473.